UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

                                        Chapter 7

In re ALLOU DISTRIBUTORS INC., et al.,        Case No. 8-03-82321-ess

                Debtors.

--------------------------------------------------------------x

KENNETH P. SILVERMAN, as Chapter 7
Trustee of ALLOU DISTRIBUTORS INC., et al.,
and CONGRESS FINANCIAL CORPORATION,

                Plaintiffs,           Adv. Pro. No. 04-08369-ess

    - against -

A-Z RX LLC, EVER READY FIRST AID MEDICAL
SUPPLY CORP., d/b/a A&M ENTERPRISE, DIXIE
EMS SUPPLY USA LLC, SILVIA DOMB a/k/a
SYLVIA DOMB, EVA SILBERSTEIN a/k/a EVA
SILVERSTEIN a/k/a EVA JACOBOWITZ, SARA
JACOBOWITZ, CHANIE JACOBOWITZ, ARI
JACOBOWITZ a/k/a AARON JACOBOWITZ,
and MOM & SONS REALTY, LLC,

                Defendants.
--------------------------------------------------------------x

## MEMORANDUM DECISION ON THE TRUSTEE'S
## MOTION FOR SUMMARY JUDGMENT

*Appearances:*

Ronald J. Friedman, Esq.           Scott A. Krinsky, Esq.
SilvermanAcampora LLP           Backenroth, Frankel & Krinsky, LLP
100 Jericho Quadrangle (Suite 300)    489 Fifth Avenue
Jericho, NY 11753               New York, NY 10017
   *Attorneys for the Chapter 7 Trustee*      *Attorneys for the Defendants*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion of plaintiff Kenneth P. Silverman, as Chapter 7 Trustee of

Allou Distributors, Inc. and other entities ("Allou"), for partial summary judgment on the claims

asserted in the complaint dated June 2, 2004, filed by the Trustee and Congress Financial

Corporation, now known as Wells Fargo Bank, N.A. ("Congress"), as agent for itself and other

lenders, against certain individual and corporate defendants (respectively, the "Individual

Defendants" and the "Corporate Defendants," and together, the "Defendants").  This motion

arises in one of many adversary proceedings brought in connection with the fraud committed by

Allou's principals, and the involuntary and voluntary bankruptcy filings that followed.

### The Parties

The Individual Defendants are Silvia Domb a/k/a Sylvia Domb, Eva Silberstein a/k/a Eva

Silverstein a/k/a Eva Jacobowitz, Sara Jacobowitz, Chanie Jacobowitz, and Ari Jacobowitz a/k/a

Aaron Jacobowitz.  In Claims One through Six, the Plaintiffs seek to hold the Individual

Defendants liable under theories of aiding and abetting breach of fiduciary duty and aiding and

abetting fraud, based on the Individual Defendants' alleged knowledge of and participation in the

breach of fiduciary duty and fraud perpetrated by Allou's former management.

The Corporate Defendants are A-Z RX, LLC ("A-Z"), Ever Ready First Aid Medical

Supply Corp. d/b/a A&M Enterprise ("Ever Ready"), and Dixie EMS Supply USA LLC

("Dixie").  The Plaintiffs bring Claims Thirteen, Fourteen, Fifteen, Seventeen, Twenty, Twenty-

One, Twenty-Two, and Twenty-Four against the Corporate Defendants under New York's

Debtor and Creditor Law ("DCL") Sections 273, 274, and 275 and Bankruptcy Code Sections

548(a)(1)(B), 550(a), and 551, to recover funds transferred to the Corporate Defendants by Allou, its principals, and affiliates.  The Plaintiffs bring Claims Nine and Ten, seeking the imposition of a constructive trust, against the Corporate Defendants.  In Claims Eleven and Twelve, the Plaintiffs assert that the Corporate Defendants were unjustly enriched by the transfers they received from Allou, its principals, and affiliates.  And in Claims Eight, Thirty-Two, and Thirty-Four, the Plaintiffs seek a permanent injunction and an order of attachment against all of the Defendants.

### *The Motion for Summary Judgment*

The Trustee argues that summary judgment should be granted against the Individual Defendants on the aiding and abetting claims because there is no genuine dispute of material fact as to the elements of these claims.  The Trustee contends that there is no dispute as to the underlying fraud and fiduciary breach at Allou, and that the evidence establishes the Individual Defendants' knowledge and participation in the fraud and fiduciary breach at Allou.  The Trustee relies on the Individual Defendants' undisputed close family relationships with the Jacobs, as spouse and sibling.  The Trustee also cites the Individual Defendants' membership in Mom & Sons, LLC a/k/a Mom & Sons Realty, LLC ("Mom & Sons") and stock ownership in the Corporate Defendants, entities that were involved in hundreds of transactions with Allou involving transfers of millions of dollars over a six-year period when Allou was engaged in a massive fraud, their control of the Corporate Defendants' bank accounts and, with the exception of Domb, their invocation of the Fifth Amendment privilege against self-incrimination at their Rule 2004 examinations.

The Trustee argues that summary judgment should be granted on the constructive

fraudulent conveyance claims against the Corporate Defendants because there is no genuine dispute of material fact as to the Debtors' insolvency and the Corporate Defendants' receipt of transfers without fair consideration or reasonably equivalent value.  The Trustee argues that the same facts support summary judgment on the constructive trust and unjust enrichment claims. And the Trustee contends that judgment should be granted on his request for a permanent injunction and an order of attachment to prevent the Individual and Corporate Defendants from dissipating any of their assets.

The Defendants argue that there are genuine disputes of material fact that preclude summary judgment on the aiding and abetting, fraudulent transfer, constructive trust, and unjust enrichment claims, especially when all inferences are drawn in their favor as non-moving parties. The Defendants note that courts have declined to draw adverse inferences from the invocation of the Fifth Amendment on summary judgment, that no such inference can be drawn with respect to Domb, and that even if an adverse inference is made, it cannot be the sole basis for liability on a summary judgment motion.

The Defendants also contend that intent, insolvency, fair consideration, and reasonably equivalent value are ordinarily factual issues that cannot be resolved on summary judgment.  And the Defendants argue that the Trustee is not entitled to summary judgment on the fraudulent transfer and common law claims against the Corporate Defendants because the evidence raises a genuine dispute of material fact as to whether the transfers were repaid.

With respect to the aiding and abetting claims, the Defendants argue that the Individual Defendants' knowledge of the transfers at issue is a factual issue that cannot be resolved on a motion for summary judgment.  The Defendants also argue that the Trustee's claims are barred

by the three-year statute of limitations for claims of breach of fiduciary duty and conversion.

The Defendants reject the Trustee's attempt to hold them liable for $200 million.  The Defendants assert that at most, the Trustee's evidence links particular Individual Defendants with some of the transactions and the Corporate Defendants.  For example, the Defendants argue with respect to Sara Jacobowitz, Chanie Jacobowitz, and Eva Jacobowitz that the Trustee "tacitly concedes that Sara, Chanie and Eva were not A-Z shareholders," and that Sara and Chanie were not shareholders of Mom & Sons or "signatories of Ever Ready."  Defs' Mem. at 14. Accordingly, they argue that these defendants cannot be held liable for the A-Z and Mom & Sons transfers.

The Defendants make several arguments in opposition to the Trustee's request for injunctive relief, including that the Trustee cannot establish the element of irreparable harm because the last alleged transfer occurred in March 2003, and because the Defendants have entered into a stipulation granting preliminary injunctive relief.  And the Defendants argue that there is no basis for an order of attachment as the Trustee did not allege or prove that the Defendants have improperly transferred any assets.  Finally, relying on *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Defendants contend that this Court lacks jurisdiction to enter a final judgment in this case because the Complaint asserts state law causes of action.

*          *          *

Based upon the entire record, and for the reasons stated below, the Court finds that it has jurisdiction over the claims asserted in the Complaint and, to the extent that these claims are finally adjudicated on this motion, that this Court has the authority to enter a final order and judgment.  In the event that the District Court concludes that this Court may not enter a final

order and judgment consistent with Article III of the United States Constitution, this
Memorandum Decision and the accompanying Order may be treated as proposed findings of fact
and conclusions of law pursuant to 28 U.S.C. § 157(c).  The Court also finds that the Trustee is
entitled to summary judgment on the fraudulent conveyance and unjust enrichment claims
against the Corporate Defendants, and that genuine disputes of material fact preclude summary
judgment as to the claims against the Individual Defendants and the requests for constructive
trust, a permanent injunction, and attachment.

<u>**Jurisdiction and Authority To Enter a Final Judgment**</u>

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b).  To the
extent that the Trustee's fraudulent transfer claims are finally adjudicated on this motion, this
Court may enter an appropriate order and judgment.  In the event that the District Court
concludes that this Court may not enter a final order or judgment consistent with Article III of the
United States Constitution on those claims, this Memorandum Decision and the accompanying
Order may be treated as proposed findings of fact and conclusions of law pursuant to
28 U.S.C. § 157(c).

<u>**Procedural History**</u>

On June 3, 2004, the Trustee and Congress filed the Complaint, asserting over thirty
causes of action.  The Defendants filed an Answer to the Complaint on July 13, 2004, in which
they deny a majority of the Trustee's allegations and assert certain affirmative defenses.  And on
July 20, 2004, this Court entered an order approving a stipulation between the Trustee and the
Defendants, including preliminary injunctive relief in favor of the Trustee.

The preliminary injunction prevents the Defendants and their agents from using, selling,

5

transferring, assigning, disposing of, distributing, commingling, encumbering, or exercising any control over their own assets, the Debtors' assets, and the Corporate Defendants' assets. The preliminary injunction does not enjoin the Individual Defendants from disposing of assets that are exempt from application to satisfy a money judgment, including 90 percent of their earnings, their Social Security payments, and their veteran's benefits and pensions.

On November 6, 2008, the Trustee filed this motion for summary judgment, together with a memorandum of law, the affidavit of Timothy M. Puopolo, a consultant employed by RAS Management Advisors, LLC ("RAS"), special management and operating consultants to the Trustee (the "Puopolo Aff."), the affidavit of Robert C. Meier, a certified public accountant and certified valuation analyst and a partner at Friedman LLP, accountants for the Trustee (the "Meier Aff."), and the affirmation of Ronald J. Friedman, attorney for the Trustee (the "Friedman Aff."), as well as certain exhibits. In addition, the Trustee filed a Statement of Undisputed Material Facts pursuant to Rule 7056-1 of the Local Bankruptcy Rules for the Eastern District of New York.

On January 12, 2009, the Defendants filed an objection to the motion. The objection is signed by counsel for the Defendants and is not sworn to or affirmed by any of the Defendants. The Defendants also filed a response to the Trustee's Statement of Undisputed Material Facts. On March 6, 2009, the Trustee filed a Reply Memorandum of Law in further support of the Summary Judgment Motion, together with a reply affidavit by Mr. Puopolo, and exhibits (the "Puopolo Reply Aff.").

The Court held a preliminary hearing on the Summary Judgment Motion on June 29, 2009, at which counsel for the Trustee and counsel for the Defendants appeared and were heard.

6

On July 10, 2009, the Trustee filed a supplemental affirmation in support of the motion (the "Pl's Supp. Aff.").  On June 5, 2012, the Trustee and the Defendants each filed supplemental letter briefs.  On August 9, 2012, the Court heard argument from counsel for the Trustee and the Defendants, and reserved decision.

**Background**

The following findings of fact are drawn from the extensive summary judgment record and the Court's docket, and are construed in the light most favorable to the Defendants as the non-moving parties.

### *The Debtors' Bankruptcy Cases*

On April 9, 2003, involuntary Chapter 11 petitions were filed against Allou Distributors, Inc. ("ADI"), and three of its affiliates, M. Sobol, Inc., Direct Fragrances, Inc., and Stanford Personal Care, Inc. (together, the "Original Debtors"), by Congress, Citibank, N.A., and LaSalle Business Credit, LLC.  The Original Debtors consented to the entry of orders for relief under Chapter 11, and on April 10, 2003, the Court issued orders for relief. The Original Debtors are wholly-owned subsidiaries of Allou Health Care, Inc. ("AHI"), a publicly traded Delaware corporation.  On April 18, 2003, Congress, Citibank, and LaSalle filed an involuntary Chapter 11 petition against AHI, and on July 14, 2003, the Court entered a consensual order for relief.

On April 18, 2003, Congress, Citibank, and LaSalle filed involuntary Chapter 11 petitions against two of ADI's six subsidiaries, Trans World Grocers, Inc., and Rona Beauty Supplies, Inc. (the "Subsequent Debtors"). On May 1, 2003, the Court entered orders for relief in these cases. On April 25, 2003, ADI's four remaining subsidiaries, Core Marketing, Inc., HBA Distributors, Inc., HBA National Sales Corp., and Pastel Cosmetic & Beauty Aids, Inc. (the "Voluntary

Debtors") filed voluntary Chapter 11 petitions.  AHI, the Original Debtors, the Subsequent

Debtors, and the Voluntary Debtors are referred to as the "Debtors" or "Allou."

By Order dated September 16, 2003, the Debtors' Chapter 11 cases were converted to

cases under Chapter 7, and Kenneth P. Silverman was appointed as the Chapter 7 trustee.  On

December 22, 2003, the Debtors' cases were substantively consolidated.

### Congress and the Loans to Allou

Congress was engaged in the business of commercial finance.  Pursuant to a Loan and

Security Agreement dated September 4, 2001, and certain related agreements, Congress, as

lender and as agent and co-arranger for other lenders, made loans and other advances and

provided financial accommodations to Allou of up to $200 million on a revolving basis.  Under

the Loan and Security Agreement, Allou could borrow funds up to a limit of 85 percent of

eligible accounts receivable and 50 percent of eligible inventory.  As of the filing of the Allou

bankruptcy petitions, Allou owed Congress approximately $178 million under the Loan and

Security Agreement and related agreements and guarantees.

### Allou's Principals and the Fraudulent Scheme

Victor Jacobs and his sons Herman Jacobs and Jacob Jacobs were controlling

shareholders of Allou.  Allou's filings with the Securities and Exchange Commission show that

the Jacobs controlled approximately 61 percent of Allou's stock.  The Jacobs served as officers

and directors of Allou, with Victor as chairman, Herman as chief executive officer, and Jacob as

executive vice president.  The Jacobs guaranteed up to $10 million of Allou's obligations to

Congress and other lenders.

From the early 1990s through 2003, the Jacobs and others orchestrated and participated in

8

a fraudulent scheme designed to misrepresent Allou's financial condition and to increase the funds available under the Congress line of credit.  As part of this scheme, Allou reported inflated inventory and false accounts receivable to its lenders, and the Jacobs transferred funds to entities that they controlled to pay the false accounts receivable.  These transfers were recorded on Allou's books as inventory purchases.  The Jacobs-controlled companies then transferred these funds back to Allou, and Allou recorded the transfers on its books as payments.  Allou transferred hundreds of millions of dollars of the funds advanced by Congress to other companies owned or controlled by the Jacobs.

On June 9, 2004, Victor, Herman, and Jacob Jacobs were indicted on federal charges including bank fraud, violations of SEC rules and regulations, and bribery of a public official.  On July 31, 2007, Herman Jacobs was sentenced to fifteen years of incarceration and three years of supervised release, and was ordered to pay more than $176 million in restitution.  The same day, Jacob Jacobs was sentenced to seven years of incarceration and three years of supervised release, and was ordered to pay $30 million in restitution.  Victor Jacobs passed away prior to the disposition of the criminal complaint and indictment against him.

### The Individual Defendants and the Corporate Defendants

Eva Jacobowitz is the wife of Victor Jacobs and is the mother of Domb, Herman Jacobs, Jacob Jacobs, and Aaron or Ari Jacobowitz a/k/a Ari Jacobs.  Domb is the sister of Herman, Jacob, and Aaron Jacobs.  Sara Jacobowitz is the wife of Aaron Jacobs.  Chanie Jacobowitz is the wife of Jacob Jacobs.  Domb was a member of A-Z and a signatory on A-Z's bank account at Signature Bank.  Domb was also the sole authorized signatory on A-Z's bank account at Banco Popular, and signed the checks written on that account.  The Trustee alleges that "[u]nder

Domb's ownership and control of A-Z, monies flowed in and out of the Banco Popular account to and from several Jacobs-controlled entities."  Pl's Supp. Aff. ¶ 7-8, Exh. 2.  Domb was also a shareholder of Ever Ready.

Eva Jacobowitz, Sara Jacobowitz, Chanie Jacobowitz, and Aaron Jacobs were shareholders of Ever Ready and Dixie.  Herman Jacobs and Jacob Jacobs were also shareholders of Ever Ready.  Eva Jacobowitz, Aaron Jacobs, Herman Jacobs, and Jacob Jacobs were authorized signatories on the Ever Ready bank account.  And Eva Jacobowitz and Aaron Jacobs were the sole owners of defendant Mom & Sons.[1]

Eva Jacobowitz, Sara Jacobowitz, Chanie Jacobowitz, and Aaron Jacobs were deposed by the Trustee pursuant to Federal Rule of Bankruptcy Procedure 2004 on November 6, 2003.  At their examinations, these defendants invoked their Fifth Amendment privilege against self-incrimination and refused to answer any questions concerning the estate, transfers from the Corporate Defendants or the Jacobs to them, or their relationship to the Corporate Defendants.

### The Transfers to the Corporate Defendants

Between January 1997 and March 2003, the Debtors paid to Ever Ready and Dixie the total amount of $87,109,911.76, in 203 separate payments (the "Ever Ready and Dixie Transfers").  The Ever Ready and Dixie Transfers include $47,964,156.69 in payments to Ever Ready made within one year of the Debtors' bankruptcies (the "One Year Transfers").  The

---

[1]  In 2005, the Trustee filed a separate adversary proceeding against Mom & Sons.  There, he alleged that Allou made transfers totaling $2.7 million to Mom & Sons in April 1997.  The Trustee moved for summary judgment in that action on September 18, 2007, and the Court granted the motion, without opposition, on October 1, 2007.  On October 3, 2007, the Court entered a judgment against Mom & Sons in the amount of $2.7 million.  In light of that judgment, the Trustee does not seek judgment on the claims against Mom & Sons here.

Debtors also made a transfer to A-Z in the amount of $81,533.47, by check dated March 5, 2003 (the "A-Z Transfer").

**Discussion**

This motion requires the Court first to address the scope of its jurisdiction and the extent to which it may enter a final judgment.  It also calls for the Court to consider the standard for summary judgment under Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, and whether an adverse inference should be drawn at the summary judgment stage from a witness's invocation of the Fifth Amendment privilege against self-incrimination.  And of course, this motion requires the Court to determine whether summary judgment is appropriate on the claims raised in the Trustee's motion.

*Jurisdiction and the Power of the Court*

Subject matter jurisdiction is the federal court's constitutional or statutory power to adjudicate a case.  *See United States v. Cotton*, 535 U.S. 625, 630 (2002).  Under Article III of the Constitution, federal courts have jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority."  U.S. Const. art. III, § 2, cl. 1.

The jurisdictional limits of federal courts are set forth in Sections 1330 to 1369 of the Judiciary Code.  *See* 28 U.S.C. §§ 1330-69.  Section 1334 addresses bankruptcy jurisdiction, and provides that the district courts have original, but not exclusive, jurisdiction over all civil proceedings"arising under" the Bankruptcy Code or "arising in or related to" cases under the Bankruptcy Code.  28 U.S.C. § 1334(b).  If a proceeding comes within any of these three categories, then the district court has jurisdiction.  *See Stern*, 131 S. Ct. at 2603; *Pfizer Inc. v.*

11

*Law Offices of Peter G. Angelos (In re Quigley Co.)*, 676 F.3d 45, 53 (2d Cir. 2012).

A proceeding *arises under* the Bankruptcy Code if it "involve[s] a cause of action created or determined by a statutory provision of title 11." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987). A proceeding *arises in* a case under the Bankruptcy Code if it covers claims that "'are not based on any right expressly created by [t]itle 11, but nevertheless, would have no existence outside of the bankruptcy.'" *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (quoting *Wood*, 825 F.2d at 97). And a proceeding *is related to* a case under the Bankruptcy Code "if the outcome of the litigation might have any conceivable effect on the bankruptcy estate, or has any significant connection with the bankrupt estate." *Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 581 (E.D.N.Y. 2009) (quotation omitted).

Under Section 157(a), district courts may refer cases over which they have jurisdiction pursuant to Section 1334 to bankruptcy courts. *See* 28 U.S.C. § 157(a). When a case is referred to a bankruptcy court, Sections 157 and 158 govern the division of labor between the district court and the bankruptcy court. Section 157 distinguishes between "core" and "non-core" proceedings. Subject to the limitations of Article III, if a matter is core, the bankruptcy court may enter a final judgment. If a proceeding is non-core, the bankruptcy court must issue proposed findings of fact and conclusions of law that are subject to *de novo* review by the district court pursuant to Section 158(a). *See* 28 U.S.C. §§ 157(c), 158(a).

This allocation of power is based on constitutional principles. District courts, as Article III courts, may finally adjudicate any matter over which they have subject matter jurisdiction. *See Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 59 (1982). Article III requires that judges "hold their Offices during good Behaviour, and shall, at stated Times,

12

receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." U.S. Const. art. III, § 1. As explained by the Supreme Court, "[b]oth of these provisions were incorporated into the Constitution to ensure the independence of the Judiciary from the control of the Executive and Legislative Branches of government." *Northern Pipeline*, 458 U.S. at 59.

By contrast, bankruptcy courts are established under Article I of the Constitution, bankruptcy judges are appointed for fixed terms, and their compensation is not protected from diminishment. As a result, Article III prevents bankruptcy judges from entering final judgments on certain types of claims. *See Stern*, 131 S. Ct. at 2601; *Northern Pipeline*, 458 U.S. at 76. As the Supreme Court explained, "[w]hen a suit is made of 'the stuff of the traditional actions at common law tried by the courts of Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Stern*, 131 S. Ct. at 2609 (citation omitted).

But not having the power to enter final judgment is different than not having subject matter jurisdiction under Section 1334. *See, e.g.*, *Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 448 F. App'x 134, 136 (2d Cir. 2011) (stating that "[s]o long as a proceeding is" core or non-core, "the Bankruptcy Court possesse[s] subject-matter jurisdiction"); *Mullarkey v. Tamboer (In re Mullarkey)*, 536 F.3d 215, 222 (3d Cir. 2008); *Kirschner v. Agoglia*, 476 B.R. 75, 78 (S.D.N.Y. 2012).

In *Stern*, a creditor filed a proof of claim arising from a state court defamation action. *Stern*, 131 S. Ct. at 2601. That creditor also filed a complaint seeking a declaration that the defamation claim was not dischargeable. *Id*. The debtor answered and asserted a counterclaim

for tortious interference with the debtor's expectancy of a gift.  *Id*.  The Supreme Court held that

while the counterclaim was core under Section 157(b)(2)(c), and therefore the statute permitted

the bankruptcy court to enter a final judgment, Article III did not.  *Stern*, 131 S. Ct. at 2620.  The

Court explained that "Article III could neither serve its purpose in the system of checks and

balances nor preserve the integrity of judicial decision making if the other branches of the

Federal Government could confer the Government's 'judicial Power' on entities outside of

Article III."  *Stern*, 131 S. Ct. at 2609.

The Supreme Court also found that the counterclaim "cannot be deemed a matter of

public right that can be decided outside the Judicial Branch."  *Stern*, 131 S. Ct. at 2611

(quotation omitted).  The Court has long recognized that certain cases involve the determination

of "public rights" that Congress may constitutionally assign to legislative courts for resolution.

*See Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856).  And in

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989), the Supreme Court held that

fraudulent conveyance actions do not fall within the "public rights" exception.

In *Stern*, the Supreme Court likewise held that the counterclaim before it:

> does not fall within any of the varied formulations of the public rights exception
> in this Court's cases.  It is not a matter that can be pursued only by grace of the
> other branches, as in *Murray's Lessee*, or one that "historically could have been
> determined exclusively by" those branches.  The claim is instead one under state
> common law between two private parties.  It does not "depend[] on the will of
> congress[]"; Congress has nothing to do with it.

*Stern*, 131 S. Ct. at 2614 (quoting *Northern Pipeline*, 458 U.S. at 68; *Murray's Lessee*, 59 U.S. at

284).

Applying this rule, courts recognize that there is a category of proceedings that are core

14

under the terms of Section 157(b), but which may not be finally adjudicated by a bankruptcy court. Accordingly, when determining the allocation of power between the district court and bankruptcy court, bankruptcy judges may not limit their inquiry to whether the proceeding is core or non-core under Section 157(b), and must look past these labels to determine if constitutional authority exists to enter a final judgment. As one court observed, "[t]hough the core/non-core distinction remains a starting point, after *Stern* it no longer ends the analysis." *In re Madison Bentley Assocs., LLC*, 474 B.R. 430, 438 (S.D.N.Y. 2012). *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 464 (S.D.N.Y. 2011) (explaining that after *Stern* "identifying a claim as core or non-core under the bankruptcy law does not necessarily determine whether a bankruptcy court is constitutionally empowered to finally adjudicate the matter" (quotation omitted)).

Following *Stern*, some courts in this Circuit have found that bankruptcy courts may not enter final judgments in proceedings to set aside fraudulent conveyances. *See Madison Bentley*, 474 B.R. at 438-39 (stating that "[c]ourts . . . have consistently held that, after *Stern*, bankruptcy courts lack authority to issue final judgments on fraudulent conveyance claims"); *Kirschner*, 476 B.R. at 81; *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 720 (S.D.N.Y. 2012).

But other courts disagree, finding that bankruptcy judges may enter final judgments on fraudulent conveyance claims. *See, e.g.*, *Fox v. Koplik (In re Perry H. Koplik & Sons, Inc.)*, 476 B.R. 746, 755 n.7 (Bankr. S.D.N.Y. 2012) (noting disagreement among courts and explaining that while the court could enter final judgment on fraudulent conveyance claims, the better course was to defer entry of judgment pending resolution of claims over which it could not enter

15

final judgment); *Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Servs., Inc.)*, 457 B.R. 314, 319-20 (Bankr. D. Del. 2011) (holding that a bankruptcy court may issue a final judgment on fraudulent transfer claims).

In sum, district courts and bankruptcy courts have jurisdiction over proceedings that arise under the Bankruptcy Code or that arise in or are related to a bankruptcy case. *See* 28 U.S.C. § 1334(b). When a case is referred to the bankruptcy court, Sections 157 and 158 govern the allocation of power between the district court and the bankruptcy court, and this division of labor "does not implicate questions of subject matter jurisdiction." *Stern*, 131 S. Ct. at 2607. Finally, the distinction between core and non-core proceedings is not dispositive of whether the bankruptcy court may enter a final judgment.

### *Jurisdiction and the Court's Authority To Enter a Final Judgment*

The Defendants argue that the "Court lacks jurisdiction to enter judgment against the Individual Defendants" on the aiding and abetting claims and against the Corporate Defendants on the constructive trust and unjust enrichment claims, because they are state law claims. The Defendants also acknowledge that they did not make a motion to withdraw the reference, and do not intend to do so. And the Defendants and the Trustee consent to the entry of proposed findings of fact and conclusions of law on any claims over which this Court has jurisdiction.

The Trustee responds that while *Stern* could have an impact on the entry of a judgment, it does not constrain this Court's ability to rule on the Trustee's summary judgment motion. On the issue of jurisdiction, the Trustee states that this Court has jurisdiction to hear each of the fraudulent transfer claims asserted and to decide the Trustee's motion.

At the outset, it is clear that the subject matter jurisdiction of this Court is not at issue.

16

The Trustee's fraudulent conveyance claims arise under the Bankruptcy Code, and the remaining claims are, at the very least, related to the Debtors' cases because they impact the estate and the distribution to creditors.  As such, this Court has jurisdiction over the claims asserted in the Complaint under Section 1334.

But under the facts of this case and *Stern*, there is a question as to whether this Court may enter a final judgment on the Trustee's common law claims for aiding and abetting breach of fiduciary duty, aiding and abetting fraud, constructive trust, and unjust enrichment, regardless of whether they are core, because each claim is "instead one under state common law between two private parties."  *Stern*, 131 S. Ct. at 2614.

There is also a question as to whether the Court may enter a final judgment on the Trustee's claims under Bankruptcy Code Sections 544(b) and 548(a)(1)(B) to avoid the transfers made to the Corporate Defendants.  Although the Defendants did not specifically object to entry of judgment on these claims, that may not resolve the issue.  *See, e.g.*, *Lyondell Chem.*, 467 B.R. at 722 (stating that "[u]nder Fed. R. Bankr. P. 7012(b), which requires 'express consent of the parties' for a bankruptcy court to enter final orders and judgments in non-core matters, mere implied consent appears to be insufficient"); *Waldman v. Stone*, 2012 WL 5275241, at *5 (6th Cir. Oct. 26, 2012) (concluding that a party could not waive the Constitutional requirement that the adjudication of "private rights" must take place in an Article III court).

This Court agrees with those courts that have concluded that "the fraudulent transfer claims asserted here are within this Court's power constitutionally to enter final judgment," for several reasons.  *See, e.g.*, *Koplik*, 476 B.R. at 755 n.7; *Kirschner v. Agoglia (In re Refco Inc.)*, 461 B.R. 181, 192 (Bankr. S.D.N.Y. 2011); *Miller*, 457 B.R. at 319-20.

17

First, this Court finds that while an avoidance claim under Bankruptcy Code Section 544(b)(1) does require an application of "applicable law," which by and large means applicable *state* law, that application has been expressly provided for by Congress in the Bankruptcy Code. 11 U.S.C. § 544(b)(1). That is different from the tortious interference claim in *Stern*, which was a cause of action provided for solely by state common law. *Stern*, 131 S. Ct. at 2614. As noted by the court in *Refco*, a fraudulent transfer claim under Bankruptcy Code Section 544(b)(1) "'flow[s] from a federal statutory scheme,' and is 'completely dependent upon adjudication of a claim created by federal law.'" *Refco*, 461 B.R. at 187 (quoting *Stern*, 131 S. Ct. at 2614). And "Congress placed that section, as well as the other statutory avoidance powers under 11 U.S.C. §§ 547, 548, 549 and 553, within a unique statutory framework." *Refco*, 461 B.R. at 187.

Second, this Court finds that the rule in *Northern Pipeline* should be applied narrowly, and does not prevent this Court from entering a final judgment on a fraudulent transfer claim. As the Supreme Court observed, *Northern Pipeline* "establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584 (U.S. 1985). And as the Second Circuit has held, "this court [has] concluded that the *Marathon* holding was a narrow one and [has] broadly construed the jurisdictional grant in the" Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). *Cent. Vt. PSC v. Herbert*, 341 F.3d 186, 191 (2d Cir. 2003) (quoting *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 707 (2d Cir. 1995)); *Refco*, 461 B.R. at 188-90 (describing the reasoning of post-*Northern Pipeline* decisions upholding the

18

constitutionality of BAFJA and applicable local emergency rules, which permit bankruptcy courts to enter final judgments in fraudulent transfer proceedings).  And "courts almost uniformly sustained the constitutionality of BAFJA's grant of power to the bankruptcy courts to decide preference and fraudulent transfer claims as part of their core jurisdiction." *Refco*, 461 B.R. at 189 (citing cases).

Third, this Court finds that the Supreme Court's holding in *Granfinanciera* does not prevent bankruptcy courts from entering a final judgment in a fraudulent transfer action under certain circumstances.  The Seventh Amendment right to a jury trial, which was the basis for the decision in *Granfinanciera*, does not prevent a bankruptcy court from entering a final judgment on "motions to dismiss and summary judgment motions on fraudulent transfer claims." *Refco*, 461 B.R. at 190.  And "the majority of courts after *Granfinanciera* continue[] to hold that bankruptcy courts [have] the power to issue final judgments in fraudulent transfer proceedings as core matters." *Refco*, 461 B.R. at 190 (citing cases).

Fourth, this Court finds that in *Stern*, as in *Northern Pipeline*, the Supreme Court expressly indicated that the decision is limited in its scope to a narrow set of circumstances which do not include fraudulent transfer claims.  The majority in *Stern* explained that "[w]e do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor [between district courts and bankruptcy courts] in the current statute." *Stern*, 131 S. Ct. at 2620.  The Court described the question presented as "a 'narrow' one," and concluded that "Congress, *in one isolated respect*, exceeded that limitation in the Bankruptcy Act of 1984." *Stern*, 131 S. Ct. at 2620 (emphasis added).  The Supreme Court also stated that "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final

19

judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S. Ct. at 2620.  Here, the Trustee's claims for the avoidance of fraudulent transfers are plainly outside the scope of such actions because they are neither counterclaims, nor based solely on state common law.  Rather, they are claims that apply state law in a manner contemplated by Bankruptcy Code Section 544(b).

Accordingly, this Court finds that it may enter a final judgment with respect to the Trustee's claims for the avoidance and recovery of fraudulent transfers.

And finally, this Court notes that the parties consent to the issuance of proposed findings of fact and conclusions of law with respect to the Trustee's claims for the avoidance of fraudulent transfers.  Accordingly, in the event that the District Court concludes that this Court may not enter a final order or judgment consistent with Article III of the United States Constitution on those claims, this Memorandum Decision and the accompanying Order may be treated as proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c).[2]

### *The Standard for Summary Judgment*

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[2]  This procedure is consistent with the procedure adopted by district courts within and outside the Second Circuit, including the Southern District of New York, the District of Vermont, the District of Delaware, and the District of Maryland.  *See, e.g.*, Standing Order 2012-05, Misc. No. 00-308 (D. Md. July 24, 2012); Amended Standing Order of Reference (D. Vt. June 22, 2012); Amended Standing Order of Reference (D. Del. Feb. 29, 2012); Amended Standing Order of Reference, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

248 (1986).  A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"To make this assessment, 'a court must construe the evidence in the light most favorable

to the nonmoving party, drawing all inferences in that party's favor.'" *Silverman v. United*

*Talmudical Academy Torah Vyirah, Inc. (In re Allou Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr.

E.D.N.Y. 2011) ("*UTA*") (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir.

2005)).  *See Mathirampuzha v. Potter*, 548 F.3d 70, 72-73 (2d Cir. 2008) (stating that in

reviewing a motion for summary judgment, a court must "construe the evidence in the light most

favorable to the [nonmoving party], drawing all reasonable inferences and resolving all

ambiguities in [that party's] favor." (citations and quotation omitted)).  Summary judgment is

appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no

reasonable trier of fact could find in favor of that party." *Heublein, Inc. v. United States*, 996

F.2d 1455, 1461 (2d Cir. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587-88 (1986)).

On summary judgment, the moving party bears the burden to show that it is entitled to

relief.  Accordingly, the moving party must first demonstrate that there is no genuine dispute of

material fact as to each essential element of its claim.  If it does not, then summary judgment will

be denied.  *See, e.g.*, *Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing

*Anderson*, 477 U.S. at 250 n.4), *aff'd*, 375 F. App'x 73 (2d Cir. 2010).

If the moving party meets this initial burden, then "the burden shifts to the nonmoving

party to come forward with evidence sufficient to create a genuine dispute as to a material fact

for trial." *UTA*, 446 B.R. at 49.  "There is no issue for trial unless there exists sufficient evidence

21

in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Cadle Co. v. Newhouse*, 2002 WL 1888716, at *4 (S.D.N.Y. Aug. 16, 2002) (citing *Anderson*, 477 U.S. at 249), *aff'd*, 74 F. App'x 152 (2d Cir. 2003). To meet this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, it must present "significant probative evidence" that a genuine dispute of fact exists. *Anderson*, 477 U.S. at 249 (citation and internal quotation marks omitted).

"Statements in the pleadings alone are not sufficient to meet this burden." *UTA*, 446 B.R. at 49. Rather, "[e]stablishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived 'to put up or shut up.'" *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003)), *aff'd*, 370 F. App'x 197 (2d Cir. 2010). "Unsupported allegations in the pleadings thus cannot create a material issue of fact." *Eugenia*, 649 F. Supp. 2d at 117 (citing *Weinstock*, 224 F.3d at 41).

Where the plaintiff's claim must be established by clear and convincing evidence, "'the issue is whether, with all conflicts in the evidence resolved and all reasonable inferences drawn in favor of [the nonmoving party], the record contains sufficient evidence from which a reasonable jury could find [for the nonmoving party] under the clear and convincing standard.'" *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 658 (Bankr. E.D.N.Y. 2008) (quoting *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 374 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004)). *See Anderson*, 477 U.S. at 255 (finding that the "clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions").

"While the issue of fraudulent intent ordinarily cannot be resolved on summary judgment, it is also well-recognized that the summary judgment rule would be rendered sterile if the mere incantation of intent would operate as a talisman to defeat an otherwise valid motion."  *UTA*, 446 B.R. at 50 (citations and internal quotation marks omitted).  *See Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (finding that when intent is at issue, "summary judgment should be used sparingly").

And finally, the denial of summary judgment in the face of a genuine dispute as to a material fact does not amount to the court's endorsement of the defendant's position.  Rather, denial of summary judgment only means that the case should be heard by the trier of fact.  *See, e.g.*, *UTA*, 446 B.R. at 50 (citing *Huff v. UARCO, Inc.*, 122 F.3d 374, 385-86 (7th Cir. 1997)).

### *Drawing Adverse Inferences on Summary Judgment*

Special concerns are raised when a moving party asks the court to draw an adverse inference from an individual's assertion of his or her Fifth Amendment privilege against self-incrimination.  Here, the Trustee argues that an adverse inference should be drawn against certain of the Individual Defendants based on their assertion of this constitutional privilege during their Rule 2004 examinations.

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  "The Fifth Amendment's protection has been applied to testimony given in civil proceedings."  *Jacobs*, 394 B.R. at 662 (citation omitted).  And it is well established that "'the Fifth Amendment does not forbid adverse inferences against parties [to civil proceedings] . . . when they refuse to testify.'"  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir.

23

2012) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

As explained by the Supreme Court, the choice "between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination." *Williams v. Fla.*, 399 U.S. 78, 84 (1970). In addition, "an invocation of the Fifth Amendment 'is not a substitute for relevant evidence,' and a litigant claiming the privilege is not 'freed from adducing proof in support of a burden which would otherwise have been his.'" *United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 83 (2d Cir. 1995) (quoting *United States v. Rylander*, 460 U.S. 752, 758, 761 (1983)).

Courts proceed with appropriate caution at the summary judgment stage in determining the consequences of the invocation of the Fifth Amendment privilege. As explained by the Second Circuit, a "claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." *4003-4005 5th Ave.*, 55 F.3d at 83 (citation omitted). *See Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.)*, 317 B.R. 612, 624 (Bankr. S.D.N.Y. 2004) (finding that "[b]ecause a party who asserts the privilege . . . must bear the consequence of lack of evidence, the claim of privilege will not prevent summary judgment" if sufficient evidence is not presented); *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 859 (S.D.N.Y. 1997), *aff'd*, 159 F. 3d 1348 (2d Cir. 1998); *SEC v. Global Telecom Servs. L.L.C.*, 325 F. Supp. 2d 94, 108-11 (D. Conn. 2004).

"At the same time, courts have found that on a motion for summary judgment, the adverse inference drawn from a party invoking the Fifth Amendment may not be the sole basis for a finding of liability." *Jacobs*, 394 B.R. at 663. As explained by one court:

24

> [T]he evidence produced by a nonmoving party's silence is not sufficiently weighty to carry a moving party's burden in a motion for summary judgment. In other words, the plaintiff's motion for summary judgment must stand or fall on the merits of the evidence adduced.

*Fidelity Funding of Cal., Inc. v. Reinhold*, 79 F. Supp. 2d 110, 116 (E.D.N.Y. 1997). *See Barnard v. Joffe (In re Inflight Newspapers, Inc.)*, 423 B.R. 6, 17 (Bankr. E.D.N.Y. 2010) (noting that whether or not a court finds "that an adverse inference may be drawn [at the summary judgment stage], the moving party must present additional evidence; it cannot rely solely on the adverse inference"); *Global Telecom Servs.*, 325 F. Supp. 2d at 109 (finding that "Plaintiff still must meet its burden of proof, and Defendants' silence, alone, does not automatically give rise to their liability").

Several courts in this Circuit have declined to draw an adverse inference when deciding a motion for summary judgment. *See, e.g.*, *Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005) (stating that "we are required at summary judgment to draw all reasonable inferences in favor of the non-moving party" and "[d]oing so, we cannot conclude that [a non-party's] silence resolves all genuine [disputes] of fact"); *Fidelity Funding of Cal., Inc.*, 79 F. Supp. 2d at 117 (explaining that "[w]hile it is settled law that a trier of fact may draw an adverse inference . . . against a party who invokes the Fifth Amendment privilege, the court in deciding this summary judgment motion is in a far different posture than a post-trial trier of fact"); *Parsons & Whittemore Enters. Corp. v. Schwartz*, 387 F. Supp. 2d 368, 371-72 (S.D.N.Y. 2005) (stating that "even assuming that a jury might draw [adverse] inferences, the court is still required at summary judgment to draw all reasonable inferences in favor of the non-moving party"). And this Court

25

previously declined to draw an adverse inference on summary judgment in a related adversary proceeding involving two of the defendants here, Eva Jacobowitz and Chanie Jacobowitz. *See Jacobs*, 394 B.R. at 664.

The Trustee argues that this Court should draw an adverse inference against the Individual Defendants who invoked their privilege against compelled self-incrimination in response to the Trustee's questions during the Rule 2004 examinations. The Trustee asks this Court to infer that these defendants had actual knowledge of the Jacobs' fraud and breach of fiduciary duty and provided substantial assistance in the commission of that fraud and breach of fiduciary duty. The Trustee argues that drawing an adverse inference is particularly appropriate here because independent evidence supports that inference, the witnesses are key figures in the subject matter of these claims, and they are in a position to clarify certain matters but declined to do so.

The Defendants respond that this Court should not draw an adverse inference at the summary judgment stage, and that an adverse inference cannot be the sole basis for liability on summary judgment. They also contend that the Trustee did not ask specific questions at the Rule 2004 examinations about their liability for aiding and abetting fraud and breach of fiduciary duty.

Courts regularly make a distinction between the nature of the adverse inference that may be drawn from a party's assertion of the Fifth Amendment privilege against compelled self-incrimination at the summary judgment stage and at trial. The adverse inference drawn from a party invoking the Fifth Amendment cannot be the sole basis for a finding of liability, and at the summary judgment stage, a court is obligated to draw all inferences in favor of the non-moving party. *See Jacobs*, 394 B.R. at 663-64; *Fidelity Funding of Cal.*, 79 F. Supp. 2d at 116-17.

26

Accordingly, based upon the entire record, the Court will not draw an adverse inference from the Individual Defendants' assertions of their Fifth Amendment privilege in the context of this summary judgment motion.

### Whether the Trustee Is Entitled to Summary Judgment on Claims One, Three, and Five – Aiding and Abetting Fraud Against the Individual Defendants

Claims One, Three, and Five seek to hold the Individual Defendants liable for aiding and abetting fraud, based on their knowledge of and participation in the Jacobs' fraud at Allou.  The elements of a claim for aiding and abetting fraud under New York law are "(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (alteration in original) (citations omitted).

### The Existence of the Jacobs' Fraud

The first element of a claim for aiding and abetting fraud is the existence of a fraud.  In support of this element, the Trustee submits the criminal pleas of Herman and Jacob Jacobs, dated November 22, 2005, in which they admit to orchestrating and participating in a fraudulent scheme at Allou.  And the Trustee argues that the transfers to the Corporate Defendants lend support to this conclusion.

The Defendants do not directly challenge the Trustee's evidence.  Rather, they respond that some of the transfers to the Corporate Defendants were repaid, and that some of the documentation supporting the transfers lacks detail.

Here, the Trustee's evidence, including the criminal pleas of Herman and Jacob Jacobs, shows that there is no genuine dispute of material fact as to the existence of the Jacobs' fraud.

Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has established that there is no genuine dispute of material fact as to the first element of the claims for aiding and abetting fraud, the existence of the Jacobs' fraud.

### The Individual Defendants' Knowledge of the Fraud

The second element of a claim for aiding and abetting fraud is the defendant's knowledge of the fraud. This element is established by demonstrating actual, not constructive, knowledge of the fraud. *UTA*, 446 B.R. at 51. As one court explained, a plaintiff "must allege" and demonstrate "that the defendant had actual knowledge of the wrongful conduct committed, not simply that the defendant should have known of the conduct." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442-43 (S.D.N.Y. 2010). *See VTech Holdings Ltd. v. Pricewaterhouse Coopers, LLP*, 348 F. Supp. 2d 255, 269 (S.D.N.Y. 2004) (stating that "[a]llegations that a defendant should have known of fraud are insufficient" to establish knowledge); *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996) (noting that under the case law, "actual knowledge is required to impose liability on an aider and abettor under New York law"), *aff'd*, 152 F. 3d 918 (2d Cir. 1998); *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 n.4 (S.D.N.Y. 2005) (stating that "the weight of the case law . . . defines knowledge in the context of an aiding and abetting claim as actual knowledge").

Moreover, "[f]raud cannot be inferred, it must be proved." *Anderson v. Malley*, 191 A.D. 573, 575, 181 N.Y.S. 729, 729 (N.Y. App. Div. 1st Dep't 1920). "Ordinarily, 'evidence of recklessness, conscious avoidance, or willful blindness as to whether the primary actor is engaged in fraud is not sufficient to satisfy the knowledge element.'" *In re Agape Litig.*, 773 F.

28

Supp. 2d 298, 308 (E.D.N.Y. 2011) (quoting *UTA*, 446 B.R. at 51).[3]

At the same time, "[a]ctual knowledge may be implied from a strong inference of fraudulent intent." *Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007). As explained by this Court:

> To be sure, a defendant's admission of actual knowledge of the underlying fraud is likely to be rare. But such direct evidence of actual knowledge is not necessary to establish this element of the claim. Rather, actual knowledge may be inferred from circumstantial evidence, provided that the central inquiry remains whether the evidence permits a reasonable finder of fact to infer that the defendant *actually knew* of the underlying fraud.

*UTA*, 446 B.R. at 51-52. *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 652 F. Supp. 2d 495, 503-04 (S.D.N.Y. 2009) (finding that on summary judgment, actual knowledge may be shown by circumstantial evidence (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000))).

The Trustee argues that this evidence is sufficient to establish that there is no genuine dispute of material fact that the Individuals Defendants knew of the Jacobs' fraud. The Trustee submits that the Individual Defendants' roles as shareholders of the Corporate Defendants and signatories on the corporate bank accounts, their invocation of the Fifth Amendment, and their close family relationship with Victor and Jacob Jacobs, establish that the Individual Defendants knew of the fraud. And as to Domb, the Trustee notes that she was the sole authorized signatory

---

[3] Although there is a dispute as to whether "conscious avoidance" is sufficient to meet the knowledge requirement of a claim for aiding and abetting fraud, it is clear that constructive knowledge is not sufficient. *See, e.g.*, *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, 2012 WL 3126834, at *1 (S.D.N.Y. July 30, 2012) (noting the dispute in the case law and stating that "the difference is a narrow one" and that "plaintiffs must allege that defendants had knowledge of the fraud above and beyond alleging that defendants were 'on notice' to exercise reasonable care" (citing *Oster v. Kirschner*, 77 A.D.3d 51, 56, 905 N.Y.S.2d 69, 72-73 (N.Y. App. Div. 1st Dep't 2010)) (quotation omitted)).

on A-Z's bank account.

The Individual Defendants respond that as the moving party on a motion for summary judgment, the Trustee bears a significant burden in establishing that there is no genuine dispute of material fact as to their knowledge of the Jacobs' fraud, and that this burden has not been met.

Here, the record shows that the Individual Defendants were shareholders of the Corporate Defendants, that they are close family members of Victor and Jacob Jacobs, and that some of the Individual Defendants were signatories on certain of the Corporate Defendants' bank accounts. The record also shows that the Corporate Defendants were involved in hundreds of transactions with Allou, involving transfers of millions of dollars over a six-year period, at a time when the Jacobs were engaged in their fraud at Allou.

To be sure, this evidence is consistent with the prospect that some or all of the Individual Defendants may have known of the Jacobs' fraud. But that is different than demonstrating that there is no genuine dispute of material fact as to whether the Individual Defendants had actual knowledge of the Jacobs' fraud. And while the Individual Defendants elected to assert their Fifth Amendment privilege at their Rule 2004 examinations, this testimonial silence does not close the gap between evidence of corporate ownership, family relationships, and bank account signature authority on the one hand, and the evidence necessary to establish the absence of a genuine dispute of material fact as to the Individual Defendants' actual knowledge of the Jacobs' fraud on the other.

Viewed another way, on summary judgment, this Court must draw all reasonable inferences in favor of the Individual Defendants as the nonmoving parties. And here, a reasonable trier of fact could conclude that the Individual Defendants were no more than nominal

or passive shareholders of the Corporate Defendants, close but unaware relatives of Victor and

Jacob Jacobs, and uninformed signatories on the Corporate Defendants' bank accounts.  That is,

this record permits the reasonable inference that the Individual Defendants did not have actual

knowledge of the fraud.

Based upon the entire record, and drawing all reasonable inferences in favor of the

nonmoving parties, the Court finds that the Trustee has not established that there is no genuine

dispute of material fact as to the second element of the claims for aiding and abetting fraud, the

Individual Defendants' knowledge of the Jacobs' fraud.

### *The Individual Defendants' Substantial Assistance in the Jacobs' Fraud*

The third element of a claim for aiding and abetting fraud is substantial assistance by the

defendant to advance the commission of the fraud.  *See Mazzaro de Abreu*, 525 F. Supp. 2d at

390.  As one court explained:

> A defendant substantially assists the commission of the fraud when it
> affirmatively assists, helps conceal, or by virtue of failing to act when required to
> do so enables the fraud to proceed and when its actions . . . proximately cause[d]
> the harm on which the primary liability is predicated.

*Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*, 340 B.R. 1, 34 (Bankr. E.D.N.Y.

2006) (alteration in original) (citations omitted).  "Moreover, even in the absence of a duty to act

or disclose information, inaction on the alleged aider and abettor's part can provide a basis for

liability where the inaction was 'designed intentionally to aid the primary fraud.'"  *Monahan*, 340

B.R. at 34 (citations omitted).  As that court further notes, "[w]hether the assistance is substantial

or not is measured . . . by whether the action of the aider and abettor proximately caused the harm

on which the primary liability is predicated." *Id.* (quotation omitted).[4]

The Trustee makes the same arguments and offers the same evidence to show substantial assistance as he does to show actual knowledge, namely, that the Individual Defendants substantially assisted the Jacobs' fraud by virtue of their ownership interests in the Corporate Defendants, their close family relationships with Victor and Jacob Jacobs, and their roles as signatories on certain of the Corporate Defendants' bank accounts, at a time when those entities received hundreds of transfers totaling millions of dollars from Allou. The Defendants likewise make the same arguments with respect to substantial assistance as they do with respect to actual knowledge.

Here again, on summary judgment, this Court must draw all reasonable inferences in favor of the Individual Defendants. *Jeffreys*, 426 F.3d at 553. The reasonable inferences that may be drawn from this record include that the Individual Defendants were unknowing participants in the Jacobs' fraud, as nominal shareholders, unaware relatives, and uninformed signatories on bank accounts. That evidence does not establish that there is no genuine dispute of material fact as to the Individual Defendants' substantial assistance in the Jacobs' fraud at Allou.

Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has not established that there is no genuine dispute of material fact as to the third element of the claims for aiding and abetting fraud, the Individual Defendants' substantial assistance in the Jacobs' fraud.

---

[4] At the same time, "some [courts] question . . . whether the 'proximate cause' standard or a lesser standard should be utilized in the context of aiding and abetting liability." *Monahan*, 340 B.R. at 34.

Accordingly, the Trustee's motion for summary judgment on Claims One, Three, and Five against the Individual Defendants, for aiding and abetting fraud, is denied.

### Whether the Trustee Is Entitled to Summary Judgment on Claims Two, Four, and Six – Aiding and Abetting Breach of Fiduciary Duty Against the Individual Defendants

Claims Two, Four, and Six seek to hold the Individual Defendants liable for aiding and abetting breach of fiduciary duty, based on their knowledge of and participation in the Jacobs' breach of fiduciary duty at Allou. The elements of a claim for aiding and abetting a breach of fiduciary duty under New York law are "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that [the] plaintiff suffered damage as a result of the breach." *Lerner*, 459 F.3d at 294 (citations omitted).[5] *See Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 49-50 (2d Cir. 2005) (citing *Kaufman v. Cohen*, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (N.Y. App. Div. 1st Dep't 2003)) (setting forth the elements of a claim for aiding and abetting breach of fiduciary duty under New York law).

### The Jacobs' Breach of Fiduciary Duty

The first element of a claim for aiding and abetting a breach of fiduciary duty is the breach by a fiduciary of a duty owed to another. To establish this element, the Trustee submits the criminal pleas of Herman and Jacob Jacobs, in which they admit to orchestrating and participating in a fraudulent scheme at Allou. And the Trustee argues that the transfers to the Corporate Defendants also show that this element has been satisfied.

---

[5] As this Court observed, "[t]he elements of aiding and abetting fraud and aiding and abetting breach of fiduciary duty have some similarities. Each claim requires the defendant to have actual knowledge of the wrongdoing and to have substantially assisted in the wrongdoing." *Silverman v. H.I.L. Assocs. Ltd. (In re Allou Distribs., Inc.)*, 387 B.R. 365, 409 (Bankr. E.D.N.Y. 2008) (citation omitted).

Again, the Defendants do not directly challenge this evidence.  Instead, they respond that some of the transfers to the Corporate Defendants were repaid, and that some of the documentation supporting the transfers lacks detail.

Here, the Trustee's evidence, including the criminal pleas of Herman and Jacob Jacobs, shows that there is no genuine dispute of material fact as to the Jacobs' breach of fiduciary duty owed to Allou.  Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has established that there is no genuine dispute of material fact as to the first element of the claims for aiding and abetting breach of fiduciary duty, the Jacobs' breach of fiduciary duty.

### The Individual Defendants' Knowing Inducement of or Participation in the Fiduciary Breach

The second element of a claim for aiding and abetting a breach of fiduciary duty is that the defendant knowingly induced or participated in the fiduciary breach.  As noted by the Second Circuit:

> With respect to the second requirement, "[a]lthough a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty." And, "[a] person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator."

*Lerner*, 459 F.3d at 294 (quoting *Kaufman*, 307 A.D.2d at 125-26, 760 N.Y.S.2d at 169-70). "[T]he inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Monahan*, 340 B.R. at 43.

The Trustee offers substantially the same evidence and makes substantially the same arguments to prove this element as he did to establish the actual knowledge and substantial assistance elements of the aiding and abetting fraud claims, namely, that the Individual

34

Defendants knowingly induced and participated in the Jacobs' breach of fiduciary duty by virtue of their ownership interests in the Corporate Defendants, their close family relationships with Victor and Jacob Jacobs, and their roles as signatories on certain of the Corporate Defendants' bank accounts at a time when those entities received hundreds of transfers totaling millions of dollars from Allou.

The Defendants, in turn, advance substantially the same arguments in response to this element of the claim as they did for aiding and abetting fraud.

Here, as noted above, the record shows that the Individual Defendants were shareholders of the Corporate Defendants, that they are close family members of Victor and Jacob Jacobs, and that some of the Individual Defendants were signatories on certain of the Corporate Defendants' bank accounts. And the record also shows that the Corporate Defendants were involved in hundreds of transactions with Allou, involving transfers of millions of dollars over a six-year period, at a time when the Jacobs were pursuing their fraud at Allou.

At the same time, while this evidence is consistent with the possibility that some or all of the Individual Defendants may have knowingly participated in the Jacobs' breach of fiduciary duty owed to Allou, that prospect does not mean that the Trustee has met his burden to show that there is no genuine dispute of material fact as to whether the Individual Defendants participated in that fiduciary breach. That is, a reasonable trier of fact could conclude that the Individual Defendants were passive shareholders of the Corporate Defendants, unaware relatives of the Jacobs, and uninformed signatories on the corporate accounts, or more generally, that the Individual Defendants did not knowingly participate in or substantially assist the Jacobs' fiduciary breach.

Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has not established that there is no genuine dispute of material fact as to the second element of the claims for aiding and abetting breach of fiduciary duty, the Individual Defendants' knowing inducement of or participation in the Jacobs' fiduciary breach.

Accordingly, the Trustee's motion for summary judgment on Claims Two, Four, and Six against the Individual Defendants, for aiding and abetting breach of fiduciary duty, is denied.[6]

### Claims Thirteen, Fourteen, Fifteen, Seventeen, Twenty, Twenty-One, Twenty-Two, and Twenty-Four - Constructive Fraudulent Transfer Against the Corporate Defendants

Claims Thirteen, Fourteen, and Fifteen seek the avoidance and recovery of the $81,533.47 transfer from Allou to A-Z under Bankruptcy Code Sections 544(b), 550(a), and 551, and DCL Sections 273, 274, and 275. Claim Seventeen seeks the avoidance and recovery of the A-Z Transfer under Bankruptcy Code Sections 548(a)(1)(B), 550(a), and 551. Similarly, Claims Twenty, Twenty-One, and Twenty-Two seek the avoidance and recovery of $85,504,850.42 in transfers from Allou to Ever Ready and Dixie under Bankruptcy Code Sections 544(b), 550(a), and 551, and DCL Sections 273, 274, and 275. And Claim Twenty-Four seeks the avoidance and recovery of the One Year Transfers, totaling $47,964,156.69 from Allou to Ever Ready and Dixie Transfers under Bankruptcy Code Sections 548(a)(1)(B), 550(a), and 551.

### Claims Seventeen and Twenty-Four – Constructive Fraudulent Transfer Under Bankruptcy Code Section 548(a)(1)(B)

Bankruptcy Code Section 548 provides:

---

[6] As the Court finds that the Trustee's motion should be denied with respect to the aiding and abetting claims against the Individual Defendants, the Court does not address the Defendants' statute of limitations defenses to these claims.

(a)(1)   The trustee may avoid any transfer . . . of an interest of the debtor in property, . . . incurred by the debtor, . . . if the debtor voluntarily or involuntarily . . .

    (B)    (i)    received less than a reasonably equivalent value in exchange for such transfer or obligation; and

        (ii)(I)    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

        (II)    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

        (III)    intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

        (IV)    made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).  Section 548(d)(2)(A) defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor."  11 U.S.C. § 548(d)(2)(A).  But the Bankruptcy Code does not define "reasonably equivalent value."  *See Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 546 (Bankr. D. Del. 2009).  "Rather, Congress left to the courts the task of setting forth the scope and meaning of this term, and courts have rejected the application of any fixed mathematical formula to determine reasonable equivalence."  *Fedders N. Am.*, 405 B.R. at 546.

As one court notes:

> The determination of whether the debtor received reasonably equivalent value for his interest requires the court to compare what was given with what was received. It is not necessary that there be 'mathematical precision' or a 'penny-for-penny' exchange in order to establish reasonably equivalent value. The court must determine whether reasonably equivalent value was exchanged based on the facts and circumstances of each case.

*Pergament v. Reisner (In re Reisner)*, 357 B.R. 206, 211 (Bankr. E.D.N.Y. 2006) (quotation and alterations omitted). And under Bankruptcy Code Section 548(a)(1)(B), "when the plaintiff demonstrates lack of 'reasonably equivalent value,' the transferee must prove 'good faith' in order to sustain [the] affirmative defense" contemplated by Section 548(c). *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 806 (Bankr. S.D.N.Y. 2005) (quoting 11 U.S.C. § 548(c)).

The Bankruptcy Code defines insolvency as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101(32). "[I]nsolvency is determined by the 'balance sheet test,' in other words whether the debtor's assets were exceeded by her liabilities at the time of the transfer." *Universal Church v. Geltzer*, 463 F.3d 218, 226 (2d Cir. 2006), *cert. denied*, 549 U.S. 1113 (2007).

### Claims Thirteen, Fourteen, Fifteen, Twenty, Twenty-One, and Twenty-Two – Constructive Fraudulent Transfer Under the DCL

Bankruptcy Code Section 544(b) authorizes a trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1).

The "applicable law" upon which the Trustee relies is set forth in DCL Sections 273,[7]

---

[7] DCL Section 273 provides that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." DCL § 273.

38

274,[8] and 275,[9] the constructive fraudulent conveyance sections of the DCL.  Under New York

law, a transfer is deemed constructively fraudulent if it is made without "fair consideration," and

one of the following conditions is met:

> "(i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275."

*Jacobs*, 394 B.R. at 660 (quoting *Sharp Int'l Corp.*, 403 F.3d at 53).

A party seeking to set aside a transfer under the DCL's constructive fraud provisions must

establish by a preponderance of the evidence that the conveyance was not made for fair

consideration.  *See Jacobs*, 394 B.R. at 660.  DCL Section 272 provides that "fair consideration"

is given for property or an obligation:

> a.   When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b.   When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

DCL § 272.  It is well settled that "'fair consideration has two components – the exchange of fair

---

[8]  DCL Section 274 provides that "[e]very conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent."  DCL § 274.

[9]  DCL Section 275 provides that "[e]very conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."  DCL § 275.

value and good faith – and both are required.'" *SEC v. Universal Express, Inc.*, 2008 WL 1944803, at *5 (S.D.N.Y. Apr. 30, 2008) (quoting *Lippe*, 249 F. Supp. 2d at 376-77).  As a result, a plaintiff can establish lack of fair consideration by showing either a "lack of 'fair equivalent' property" in exchange for the transfer "or a lack of good faith on the part of the transferee" in receiving the transfer.  *Picard v. Madoff (In re Bernard L. Madoff Inv. Secs. LLC)*, 458 B.R. 87, 110 (Bankr. S.D.N.Y. 2011).  *See Silverman v. Sound Around, Inc. (In re Allou Distribs., Inc.)*, 404 B.R. 710, 717 (Bankr. E.D.N.Y. 2009) (finding that a plaintiff "must show either that there was not an exchange of fair value or that [the transferee] did not act in good faith"); *Universal Express*, 2008 WL 1944803, at *5 (explaining that good faith and fair value are both required components of fair consideration); *Actrade*, 337 B.R. at 806 (stating that under New York law, good faith is an "integral part" of establishing fair consideration).

"[T]he recipient of the debtor's property provides fair consideration by either conveying property or discharging an antecedent debt, provided that such exchange is a 'fair equivalent' of the property received or discharged." *Actrade*, 337 B.R. at 803 (quoting *Sharp*, 403 F.3d at 53 n.3).  As courts have noted, "fair consideration" under the DCL and "reasonably equivalent value" under Bankruptcy Code Sections 548(a)(1)(B) and (C) "have the same fundamental meaning . . . and are interpreted similarly by the courts." *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 677 (Bankr. S.D.N.Y. 2000) (citing cases), *aff'd*, 264 B.R. 303 (S.D.N.Y. 2001).  *See Madoff Inv. Secs.*, 458 B.R. at 110 (noting that fair consideration and reasonably equivalent value have essentially the same meaning).

Where "a transferee has given equivalent value in exchange for the debtor's property," the Second Circuit has concluded that "the statutory requirement of 'good faith' is satisfied if the

40

transferee acted without either actual or constructive knowledge of any fraudulent scheme." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995). *See* DCL § 278(1) (stating that "[w]here a conveyance . . . is fraudulent as to a creditor, such creditor" may set aside or disregard that conveyance against anyone "except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase").

Under the DCL, "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." DCL § 271(1). And "[t]o establish that a person is or will be thereby rendered insolvent, a plaintiff does not need to adduce formal evidence such as testimony from bankruptcy proceedings or balance sheets to demonstrate a defendant's financial distress." *Ostashko v. Ostashko*, 2002 WL 32068357, at *25 (E.D.N.Y. Dec. 12, 2002) (quotation omitted), *aff'd*, 79 F. App'x 492 (2d Cir. 2003).

In addition, "[u]nder DCL § 273, there is a long-recognized presumption of insolvency where the debtor makes a conveyance without fair consideration." *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 30, 2000). As the Second Circuit notes:

> [T]here is a rule of long standing in the New York courts that a voluntary conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.

*Feist v. Druckerman*, 70 F.2d 333, 334 (2d Cir. 1934). When this presumption arises, the burden shifts to the transferee to come forward with proof of the transferor's solvency. *See Ackerman v. Ventimiglia (In re Ventimiglia)*, 362 B.R. 71, 83 (Bankr. E.D.N.Y. 2007).

***Claims Thirteen, Fourteen, Fifteen, Seventeen, Twenty, Twenty-One, Twenty-Two, and
Twenty-Four – Recovery of Transfers Avoided Under the DCL and the Bankruptcy Code***

Bankruptcy Code Section 551 provides that any transfer that is "avoided . . . is preserved

for the benefit of the estate." 11 U.S.C. § 551. "The issue of whether a transfer is avoidable is

distinct from the issue of recovery." *UTA*, 446 B.R. at 65 (citing *Bruno Mach. Corp. v. Troy Die

Cutting Co. (In re Bruno Mach. Corp.)*, 435 B.R. 819, 847 (Bankr. N.D.N.Y. 2010)). "An

avoidance nullifies the transfer. As a result, the transferred property becomes a part of the estate

automatically." *Bruno Mach. Corp.*, 435 B.R. at 847 (quotation omitted).

Bankruptcy Code Section 550(a) provides that "to the extent that a transfer is avoided . . .

the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so

orders, the value of such property." 11 U.S.C. § 550(a).[10] "'Section 550(a) is intended to restore

the estate to the financial condition it would have enjoyed if the transfer had not occurred.'"

*UTA*, 446 B.R. at 65 (quoting *Hirsch v. Gersten (In re Centennial Textiles, Inc.)*, 220 B.R. 165,

176 (Bankr. S.D.N.Y. 1998)). *See Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 133, 508

N.Y.S.2d 17, 25 (N.Y. App. Div. 2d Dep't 1986) (stating that "[t]he creditor's remedy in a

fraudulent conveyance action is limited to reaching the property which would have been

available to satisfy the judgment had there been no conveyance"). And under Bankruptcy Code

Section 550(d), "[t]he trustee is entitled to only a single satisfaction under [Section 550(a)]." 11

U.S.C. § 550(d).

The determination whether to permit a credit for funds that are returned to a transferor "is

based on principles of equity that a court . . . may apply . . . with considerable discretion."

---

[10]   DCL Section 278 provides that a fraudulent conveyance may be "set aside or . . .
annulled to the extent necessary to satisfy [the] claim." DCL § 278.

*Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou Group, LLC*, 758 F. Supp. 2d 222, 229 (S.D.N.Y. 2010) (distinguishing cases that have granted credits where the defendant was not "totally innocent of wrongdoing"). *See Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717, 720 (7th Cir. 2002) (finding with respect to a gratuitous transfer where there was evidence of actual fraud that "the fact that some or for that matter all of it may later have seeped back to the debtor does not legitimize the transfer").

### *Whether the Trustee Is Entitled to Summary Judgment on Claims Thirteen and Twenty – Avoidance and Recovery of Transfers Under DCL Section 273*

Claims Thirteen and Twenty seek the avoidance and recovery of transfers under DCL Section 273 and Bankruptcy Code Sections 544(b), 550(a), and 551. In Claim Thirteen, the Trustee seeks to avoid and recover $81,533.47 in a transfer made to A-Z, and in Claim Twenty, the Trustee seeks to avoid and recover $85,504,850.42 in transfers made to Ever Ready and Dixie.

### *Fair Consideration*

The Trustee argues that the Debtors, distributors of health and beauty products, had virtually no legitimate business with the Corporate Defendants. Based on the investigation conducted by RAS, the Trustee's special management and operating consultants, the Trustee argues that between January 1997 and March 2003, Allou paid $87,109,911.76 to Ever Ready and its alter-ego Dixie in more than 200 separate payments, and that $85,504,850.42 was paid without the receipt of fair consideration in return. And the Trustee notes that by check dated March 5, 2003, Allou transferred $81,533.47 to A-Z in a single payment, again without the receipt of fair consideration in return.

The Trustee also argues that the Ever Ready and Dixie Transfers were recorded on Allou's books and records in an account identified internally as "Accounts Payable" or "Loan & Exchange," and that these transactions correspond to sales or loans that are not supported by evidence of transfer of any product or other consideration. And he argues that between June 6, 2002, and the Petition Date, Ever Ready received at least $39,959,084.78, and made no corresponding payments to Allou. As a result, the Trustee claims that he is entitled to recover $85,504,850.42 in constructively fraudulent transfers from these defendants.

The Trustee argues that the A-Z Transfer was used to capitalize A-Z because it was the first deposit into A-Z's bank account. And the Trustee contends that A-Z did not make any payment or provide any corresponding value to Allou.

The Defendants do not dispute that the Ever Ready, Dixie, and A-Z Transfers occurred. Nor do they argue that fair consideration was given, or provide evidence with respect to value. Rather, the Defendants respond that the question of fair consideration is one of fact that cannot be determined on summary judgment.

Here, the record shows that Allou paid $87,109,911.76 to Ever Ready and its alter-ego Dixie in some 203 separate payments between January 1997 and March 2003, and that $85,504,850.42 was paid without receipt of fair consideration. The record also shows that Allou transferred $81,533.47 to A-Z in March 2003, and that A-Z did not provide value to Allou in the form of a corresponding transfer, services, or otherwise.

Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has established that there is no genuine dispute of material fact as to whether the transfers to A-Z, Dixie, and Ever Ready were made for

fair consideration.

***Insolvency***

The Trustee argues that the Debtors were insolvent when the transfers to A-Z, Ever Ready, and Dixie were made.  In support of this argument, the Trustee submits the affidavit of Robert C. Meier of Friedman LLP, the accounting firm retained by the Trustee.  Based on a forensic review of the Debtors' books and records, Meier concludes that the Debtors' liabilities exceeded their assets when the transfers were made.  He also concludes that when the transfers were made, the Debtors were not in compliance with the loan covenants with their lenders and would not have been able to pay their debts as they came due.  The Trustee also notes that under New York law, there is a presumption of insolvency when transfers are made without fair consideration.

The Defendants respond that insolvency is a question of fact and that the Trustee's insolvency analysis is flawed because it does not address the Corporate Defendants' repayment of funds to the Debtors.

Here, the Trustee has submitted persuasive evidence sufficient to show that the Debtors were insolvent at the time of the transfers.  While the Defendants argue that it is not appropriate to resolve this question at the summary judgment stage, they have not come forward with expert or other persuasive evidence to support that position, nor have they identified any viable grounds to question the Trustee's evidence.  In addition, the Court has found that Allou made the transfers at issue without fair consideration, and this creates a presumption of insolvency.  The Defendants do not successfully rebut this presumption.

Based upon the entire record, and drawing all reasonable inferences in favor of the

nonmoving parties, the Court finds that the Trustee has established that there is no genuine dispute of material fact as to the Debtors' insolvency at the time of the transfers to A-Z, Ever Ready, and Dixie.

### The Corporate Defendants' Defense of Repayment

The Corporate Defendants argue that the Trustee's own allegations and records of the criminal actions brought against the Jacobs show that the transfers were repaid in whole or in part to Allou during the course of the fraud. In support of this argument, the Corporate Defendants offer the Government's Sentencing Memorandum in the criminal cases against the Jacobs. They note that the Sentencing Memorandum states that "[o]ver the course of the conspiracy, Aaron Jacobs's companies transferred more than $400 million back to Allou to be applied to the accounts of the bogus receivables." Defs' Obj. Exh. C at 8.

The Trustee responds that the Defendants' contention that Ever Ready and Dixie made payments to Allou does not overcome the Trustee's allegations and proof. The Trustee argues that even taking these payments into account, the net balance of transfers demonstrates that Allou paid $85,504,850.42 to Ever Ready and Dixie, and paid $81,533.47 to A-Z, without receipt of fair consideration or reasonably equivalent value. And the Trustee argues that the record shows that between June 6, 2002 and the Petition Date, Allou made payments of at least $39,959,084.78, to Ever Ready but received no payments in return.

Here, the Trustee seeks to avoid and recover transfers in a sum that corresponds to the net balance of transfers from Allou to these Defendants, as shown by the record. And the Defendants do not offer evidence of particular payments from the Corporate Defendants to Allou, in the form of canceled checks, wire transfer or other bank records, or other information

sufficient to raise a genuine dispute of material fact as to the sum that the Trustee seeks.

Rather, the Defendants point to statements in the Sentencing Memorandum to the effect that Aaron Jacobs "transferred more than $400 million back to Allou." Defs' Obj. Exh. C at 8. But the Sentencing Memorandum does not identify the source of those funds, and instead, describes a process where the funds were "to be applied to the accounts of the bogus receivables" and that "[o]nce the old bogus receivables were retired in this way, new ones were created and the fraud continued." Defs' Obj. Exh. C. at 8. And the Sentencing Memorandum states that "[t]here are other examples of millions of dollars of Allou money being transferred to overseas companies controlled by Herman Jacobs with Allou receiving nothing in return." Defs' Obj. Exh C. at 11.

At most, the Defendants' evidence shows that the Jacobs' fraud included the transfer of funds in both directions between Allou and the Defendants, and that funds flowed between Allou and the Corporate Defendants in hundreds of transactions over an extended period of time. It does not raise a genuine dispute of material fact as to whether the transfers that the Trustee seeks to avoid and recover were repaid to Allou. Nor does it undermine the Trustee's evidence that, for example, between June 6, 2002 and the Petition Date, Allou made at least $39,959,084.78 in transfers to Ever Ready, but Ever Ready made no payments to Allou in return, or that Allou made a single transfer of $81,533.47 to A-Z, but A-Z made no payments in return. Measured against the evidence advanced by the Trustee, the Defendants' evidence does not constitute "significant probative evidence" that a genuine dispute of fact exists on this issue. *Anderson*, 477 U.S. at 249 (quotation omitted).

Accordingly, the Trustee's motion for summary judgment on Claim Thirteen, to avoid

and recover a transfer made by the Debtors to A-Z under Bankruptcy Code Sections 544(b), 550(a), and 551, and DCL 273, in the amount of $81,533.47, and Claim Twenty, to avoid and recover transfers made by the Debtors to Ever Ready and Dixie under Bankruptcy Code Sections 544(b), 550(a), and 551, and DCL 273, in the amount of $85,504,850.42, is granted.[11]

***Whether the Trustee Is Entitled to Summary Judgment on Claims Seventeen and Twenty-Four – Avoidance and Recovery of Transfers Under Section 548(a)(1)(B)***

Claims Seventeen and Twenty-Four seek the avoidance and recovery of transfers under Bankruptcy Code Sections 548(a)(1)(B), 550(a), and 551.  In Claim Seventeen, the Trustee seeks to avoid and recover the A-Z Transfer of $81,533.47, and in Claim Twenty-Four, the Trustee seeks to avoid and recover $47,964,156.69 in transfers made to Ever Ready and Dixie.  That is, the Trustee seeks to recover a portion of the funds that he seeks under Claims Twenty, Twenty-One, and Twenty-Two from Ever Ready and Dixie, and the entire sum that he seeks under those Claims from A-Z, namely the amount that was transferred within Section 548(a)(1)(B)'s one-year reachback period.

***Lack of Reasonably Equivalent Value and Insolvency***

The parties offer substantially the same arguments and evidence with respect to these claims as they offer with respect to the claims under Section 548(a)(1)(B).  As noted, "fair consideration" under the DCL and "reasonably equivalent value" under Bankruptcy Code Sections 548(a)(1)(B) and (C) "have the same fundamental meaning . . . and are interpreted similarly by the courts."  *Churchill Mortg. Inv. Corp.*, 256 B.R. at 677 (explaining that fair consideration and reasonably equivalent value have essentially the same meaning).  Based upon

---

[11]  Because the Court finds that the Trustee is entitled to Summary Judgment under DCL Section 273, it is not necessary to consider the Trustee's motion with respect to DCL Sections 274 and 275.

the entire record and the Court's determination with respect to fair consideration under the DCL, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has established that there is no genuine dispute of material fact as to whether the transfers to A-Z, Ever Ready, and Dixie were made for reasonably equivalent value.

With respect to insolvency, the Trustee's evidence, including the Meier Affidavit, establishes that the Debtors' liabilities exceeded their assets when the transfers were made, and that the Debtors were not in compliance with the loan covenants with their lenders and would not have been able to pay their debts as they came due. Based upon the entire record and the Court's determination with respect to insolvency under the DCL, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has established that there is no genuine dispute of material fact as to the Debtors' insolvency at the time of the transfers to A-Z, Ever Ready, and Dixie.

Finally, for the reasons stated above, the Defendants' evidence of transfers of funds in both directions between Allou and the Defendants does not raise a genuine dispute of material fact as to whether the transfers that the Trustee seeks to avoid were repaid to Allou. Here too, the Defendants' evidence does not constitute "significant probative evidence" that a genuine dispute of material fact exists on this issue. *Anderson*, 477 U.S. at 249 (quotation omitted).

Accordingly, the Trustee's motion for summary judgment on Claim Seventeen, to avoid and recover a transfer made by the Debtors to A-Z under Bankruptcy Code Sections 548(a)(1)(B), 550(a), and 551, in the amount of $81,533.47, and Claim Twenty-Four, to avoid and recover transfers made by the Debtors to Ever Ready and Dixie under Bankruptcy Code Sections 548(a)(1)(B), 550(a), and 551, in the amount of $47,964,156.69, is granted.

49

***Whether the Trustee Is Entitled to Summary Judgment on Claims Eleven and Twelve – Unjust
Enrichment Against the Corporate Defendants***

Claim Eleven seeks the recovery of $81,533.47 from A-Z under a claim of unjust

enrichment, and Claim Twelve seeks the recovery of $85,504,850.42 from Ever Ready and Dixie

on the same grounds.

A claim for unjust enrichment under New York law "require[s] proof that (1) defendant

was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against

permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd. v. Phoenix*

*Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005). As the

Second Circuit notes, "[t]he 'essence' of such a claim 'is that one party has received money or a

benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)

(quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 906, 685 N.Y.S.2d 381, 381

(N.Y. App. Div. 4th Dep't 1999)).

At the same time, "courts may reduce the amount of a claim for unjust enrichment based

on repayment." *UTA*, 446 B.R. at 76 (citing *Kleinman v. E.L. Tool & Die Co.*, 30 A.D.3d 1123,

1127, 817 N.Y.S.2d 217, 221 (N.Y. App. Div. 1st Dep't 2006). *See Apollon Waterproofing &*

*Restoration Corp. v. Bergassi*, 241 A.D.2d 347, 348, 661 N.Y.S.2d 957, 957 (N.Y. App. Div. 1st

Dep't 1997) (affirming dismissal of unjust enrichment claim on summary judgment where

defendants had returned the subject funds and "therefore did not retain any benefit unjustly").

The Trustee argues that there is no genuine dispute of material fact that the Corporate

Defendants received the benefit of the transfers from Allou or that circumstances require that the

Corporate Defendants return the funds they received.

50

The Defendants respond that there is a genuine dispute of material fact as to whether the Corporate Defendants repaid the funds that the Trustee seeks to recover.

Here, as discussed above, the record establishes that the Corporate Defendants received millions of dollars in transfers without offering fair value in return.  The Defendants' evidence, including the Sentencing Memorandum, is not sufficient to raise a genuine dispute of material fact as to whether it would be unjust for the Corporate Defendants to retain any funds that they received and retained.

Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has established that there is no genuine dispute of material fact as to whether A-Z, Ever Ready, and Dixie were unjustly enriched.

Accordingly, the Trustee's motion for summary judgment on Claim Eleven, for unjust enrichment against A-Z, in the amount of $81,533.47, and Claim Twelve, for unjust enrichment against Ever Ready and Dixie, in the amount of $85,504,850.42, is granted.

### *Whether the Trustee Is Entitled to Summary Judgment on Claims Nine and Ten – Constructive Trust Against the Corporate Defendants*

Claim Nine seeks the imposition of a constructive trust over the shares and assets of A-Z in favor of the Plaintiffs.  Claim Ten seeks the same relief over the shares and assets of Ever Ready and Dixie.

"Under New York law, to find constructive trust the courts look to see if there are (1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." *In re Ventola*, 398 B.R. 495, 498 (Bankr. E.D.N.Y. 2008).  Its "purpose is to prevent unjust enrichment, although unjust enrichment does not necessarily implicate the

performance of a wrongful act," and as an equitable remedy, a constructive trust is "necessarily flexible to accomplish its purpose." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999) (citations omitted).

The Trustee argues that there is no genuine dispute of material fact that the Corporate Defendants were unjustly enriched by the transfers they received from Allou, and that the Corporate Defendants were "owned and controlled by the Jacobs family, in furtherance of a massive fraudulent scheme perpetrated upon the Debtors, their lenders and legitimate creditors." Pl's Mem. at 15-16. And the Trustee contends that as a matter of equity, a constructive trust should be imposed upon the Corporate Defendants.

The Defendants again respond that there is a genuine dispute of material fact as to whether the Corporate Defendants repaid the funds that the Trustee seeks to recover.

Here, the Court has already found that the Trustee is entitled to summary judgment on its unjust enrichment claim. But the Trustee has not established that there is no genuine dispute of material fact as to other elements of this claim, namely that there was a promise, express or implied, to pay back the transferred funds, and that the transfers were made in reliance thereon. In addition, equity does not require the imposition of a constructive trust because the Trustee may recover these funds under the fraudulent transfer and unjust enrichment claims.

Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has not established that there is no genuine dispute of material fact as to each of the elements of the constructive trust claims.

Accordingly, the Trustee's motion for summary judgment on Claims Nine and Ten against the Corporate Defendants, for the imposition of a constructive trust, is denied.

***Whether the Trustee Is Entitled to Summary Judgment on Claims Eight and Thirty-Two –
Permanent Injunctive Relief Against All Defendants***

Claims Eight and Thirty-Two seek permanent injunctions against all of the Defendants.

Claim Eight seeks the entry of an order permanently enjoining all of the Defendants and any

relatives, agents, servants, employees, former employees, persons, or entities acting on their

behalf, purporting to act on their behalf, under their control or in concert or participating with

them from using, dissipating, assigning, encumbering, hypothecating, transferring, selling,

disposing of, distributing, or exercising any control over any and all of the Debtors' property and

assets, wherever located, and Defendants' property and assets, wherever located.  Claim

Thirty-Two seeks substantially the same relief.

"To obtain a permanent injunction, a party must establish three things: (1) success on the

merits; (2) the lack of an adequate remedy at law; and (3) irreparable harm if relief is not

granted."  *UBS Sec. LLC v. Voegeli*, 405 F. App'x 550, 551 (2d Cir. 2011).  Some courts in this

Circuit have also required a showing "that, considering the balance of hardships between the

plaintiff and defendant, a remedy in equity is warranted; and . . . that the public interest would

not be disserved by a permanent injunction."  *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010)

(quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

***Success on the Merits***

The first element for permanent injunctive relief is success on the merits.  As a permanent

remedy, a permanent injunction is available only when the plaintiff succeeds on the merits of a

claim.  *See Schmelzer ex rel. Schmelzer v. New York*, 363 F. Supp. 2d 453, 456 (E.D.N.Y. 2003)

(stating that "[t]he standard for a permanent injunction is the same as that for a temporary

injunction, except that Plaintiffs must succeed on the merits").

Here, as described above, the Court has determined that the Trustee is entitled to summary judgment on the fraudulent transfer and unjust enrichment claims against the Corporate Defendants.

Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has established that there is no genuine dispute of material fact as to the first element of the claims for a permanent injunction, success on the merits of the fraudulent transfer and unjust enrichment claims.

### Absence of an Adequate Remedy at Law

The second element for permanent injunctive relief is the lack of an adequate remedy at law. As the Second Circuit notes, "[w]here there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005). And "even where a money award may be adequate, injunctive relief may be granted where, for example, the defendant 'intended to frustrate any judgment on the merits' by 'transferring its assets out of the jurisdiction.'" *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 126 (E.D.N.Y. 2004) (quoting *Green v. Drexler (In re Feit & Drexler, Inc.)*, 760 F.2d 406, 416 (2d Cir. 1985)).

The Trustee argues that the Defendants' record of fraudulent and criminal activity shows that they are likely to engage in conduct designed to frustrate the Trustee's efforts to enforce a judgment against them. The Trustee notes that hundreds of transfers amounting to millions of dollars occurred among the Debtors and the Corporate Defendants in furtherance of the Jacobs'

fraud at Allou.  The Trustee also states that the Defendants have not cooperated with his investigation of potential assets, and will likely continue on that path.

The Defendants respond that permanent injunctive relief is unwarranted, on grounds that the Trustee has an adequate remedy at law.  In this context, they note that the Trustee is pursuing remedies at law against them, and seeks some $200 million in money damages.

Here, there is an adequate remedy at law, namely money damages.  As a result, injunctive relief may only be granted under extraordinary circumstances.  *See Moore*, 409 F.3d at 510; *Rabbi Jacob Joseph Sch.*, 342 F. Supp. 2d at 126.  While the Trustee offers evidence of the Jacobs' fraud at Allou and the Corporate Defendants' role in that fraud, a preliminary injunction remains in effect.  And the Trustee has not offered any specific evidence that shows that the Corporate Defendants have violated the preliminary injunction or that they intend to frustrate a judgment on the merits by, for example, transferring assets out of the jurisdiction.

Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has not established that there is no genuine dispute of material fact as to the second element of the claims for a permanent injunction, the lack of an adequate remedy at law.

### Irreparable Harm if the Injunctive Relief Is Not Granted

The third element for permanent injunctive relief is irreparable harm.  "Irreparable harm must be imminent, not remote or speculative."  *Marriott v. Cnty. of Montgomery*, 426 F. Supp. 2d 1, 11 (N.D.N.Y. 2006).

The Trustee argues that although he is seeking monetary relief from the Defendants, there remains a significant risk of imminent and irreparable harm, because the Defendants may

wrongfully dissipate or transfer their assets in order to prevent the Trustee from collecting a judgment. This risk of harm is established, he urges, by the Defendants' involvement in the Jacobs' fraud at Allou, and by the Individual Defendants' lack of cooperation during the Rule 2004 examinations.

The Defendants respond that the preliminary injunction already in place enjoins the Corporate Defendants from disposing of any of their or the Debtors' assets. They argue that this shows that there is no threat of imminent and irreparable harm.

Here, the Corporate Defendants' past activities in connection with the Jacobs' fraud at Allou does not give rise to a threat of imminent irreparable harm. The preliminary injunction remains in effect. And the Trustee has not established that the Corporate Defendants have violated the preliminary injunction or taken steps to frustrate a judgment on the merits.

Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has not established that there is no genuine dispute of material fact as to the third element of the claims for a permanent injunction, irreparable harm.

Accordingly, the Trustee's motion for summary judgment on Claims Eight and Thirty-Two against all Defendants, for a permanent injunction, is denied.

### *Whether the Trustee Is Entitled to Summary Judgment on Claim Thirty-Four – Order of Attachment Against All Defendants*

Claim Thirty-Four seeks the entry of an order of attachment pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 7064 against the property and assets of the Defendants, of any kind or nature, located in New York State.

To obtain an order of attachment under New York law, the moving party must

demonstrate:

> (1) it has stated a claim for a money judgment; (2) it has a probability of success
> on the merits; (3) the defendant 'with intent to defraud his creditors or frustrate
> the enforcement of a judgment that might be rendered in plaintiff's favor, has
> assigned, disposed of, encumbered or secreted property, or removed it from the
> state or is about to do any of these acts;' and (4) the amount demanded from the
> defendant is greater than the amount of all counterclaims known to the party
> seeking attachment.

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, 306 F. Supp. 2d

482, 485 (S.D.N.Y. 2004) (quoting *Bank Leumi Trust Co. v. Istim, Inc.*, 892 F. Supp. 478, 481

(S.D.N.Y. 1995)).  *See* NY CPLR § 6201(3).  Attachment is viewed as "a harsh and

extraordinary remedy," and even when the statutory requirements are satisfied, "the issuance of

relief remains in the discretion of the Court."  *JSC Foreign Econ. Ass'n Technostroyexport*, 306

F. Supp. 2d at 485.

As there is no dispute that the Trustee seeks a money judgment and there are no

counterclaims, the only elements that are in dispute are whether there is a probability of success

on the merits and whether the Defendants, with intent to defraud their creditors, disposed of their

property or are about to do so.

### The Defendants' Frustration of the Enforcement of a Judgment

The Trustee argues that the Individual Defendants' failure to answer questions about

Allou's assets, their relationship to the Jacobs, and their affiliation to the Corporate Defendants

demonstrates the Defendants' intent to defraud creditors and warrants an order of attachment to

prevent the dissipation of assets.  The Trustee also contends that the Defendants' assets are likely

commingled with Allou's wrongfully diverted assets.  The Trustee notes that courts in this

Circuit have issued orders of attachment against principals and officers of corporations where funds were diverted from the corporations by the principals and officers, including *Mishkin v. Kenney & Branisel, Inc.*, 609 F. Supp. 1254, 1257 (S.D.N.Y. 1985), *aff'd*, 779 F.2d 35 (2d Cir. 1985), and *O'Connell v. Pincus (In re Our Distribution Co.)*, 110 B.R. 658, 662-63 (Bankr. S.D.N.Y. 1990)).

The Defendants respond that the Trustee has failed adequately to allege, much less to prove, that the Defendants improperly transferred any assets to frustrate the enforcement of a judgment. And the Defendants argue that their consent to a preliminary injunction "negates any fraudulent intent or attempt to frustrate judgment enforcement." Defs' Obj. at 5.

Here, the Trustee does not submit evidence sufficient to show that the Defendants have dissipated or intend to dissipate any of their assets with the intent to frustrate the enforcement of a judgment in this Case. The Trustee does not offer persuasive evidence that establishes that, either before or after the Petition Date, the Individual Defendants diverted funds from the Corporate Defendants or the Debtors to themselves. The preliminary injunction remains in effect and the Trustee does not offer evidence that it has been violated or that the Defendants intend to frustrate a judgment on the merits.

Based upon the entire record, and drawing all reasonable inferences in favor of the nonmoving parties, the Court finds that the Trustee has not established that there is no genuine dispute of material fact as to one of the elements of attachment under CPLR § 6201, and it is therefore unnecessary to consider the final element, probability of success on the merits.

Accordingly, the Trustee's motion for summary judgment on Claim Thirty-Four against all of the Defendants, seeking an order of attachment, is denied.

**<u>Conclusion</u>**

For the reasons stated herein, the Trustee's motion for summary judgment is granted with respect to Claim Eleven, for unjust enrichment against A-Z, in the amount of $81,533.47, Claim Twelve, for unjust enrichment against Ever Ready and Dixie, in the amount of $85,504,850.42, Claim Thirteen, to avoid and recover a transfer made by Allou to A-Z under Bankruptcy Code Sections 544(b), 550(a), and 551, and DCL 273, in the amount of $81,533.47, Claim Seventeen, to avoid and recover a transfer made by the Debtors to A-Z under Bankruptcy Code Sections 548(a)(1)(B), 550(a), and 551, in the amount of $81,533.47, Claim Twenty, to avoid and recover transfers made by the Debtors to Ever Ready and Dixie under Bankruptcy Code Sections 544(b), 550(a), and 551, and DCL 273, in the amount of $85,504,850.42, and Claim Twenty-Four, to avoid and recover transfers made by the Debtors to Ever Ready and Dixie under Bankruptcy Code Sections 548(a)(1)(B), 550(a), and 551, in the amount of $47,964,156.69.  In the event that the District Court concludes that this Court may not enter a final order or judgment consistent with Article III of the Constitution on those claims, this Memorandum Decision and accompanying order may be treated as proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c).  In all other respects, the Trustee's motion is denied.

An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**December 3, 2012**

_Elizabeth S. Stong_
**Elizabeth S. Stong**
**United States Bankruptcy Judge**